hrk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEPHANIE R. GREEN, *et al.*, ) <br> on Behalf of Themselves and All Others ) <br> Similarly Situated, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HARBOR FREIGHT TOOLS USA, INC., ) <br> ) <br>       Defendant. ) <br> _____) | Case No. 09-CV-2380-JAR-JPO |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Conditional Class Certification and Notification of All Putative Class Members (Doc. 58). The matter is fully briefed. For the reasons stated in detail below, plaintiffs' motion is granted in part and denied in part. Specifically, the Court will conditionally certify the following class:

> Individuals employed by Harbor Freight Tools USA, Inc. and any predecessors from the time period three years from the date of the Court's order to the present with the title Store Manager at any Harbor Freight Tools retail store.

The Court will authorize written notice to be sent to putative plaintiffs. However, the Court first directs the parties to confer, attempt to agree on a proper notice and consent-to-join form, and resubmit the forms for the Court's approval. At this time, the Court denies plaintiffs' request to publish notice electronically. Finally, the Court grants plaintiffs' request for putative plaintiffs' names and contact information.

**I.     Standard**

Plaintiffs seek to conditionally certify their claims brought under the Fair Labor

Standards Act ("FLSA") as a collective action under 29 U.S.C. § 216(b). An action under the FLSA may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[1] Unlike a class action under Federal Rule of Civil Procedure 23, to participate in an FLSA collective action, all plaintiffs must "give[ ] [their] consent in writing to become such a party," and it must be "filed in the court in which such action is brought."[2]

Before notice is sent to putative plaintiffs to inform them of the pending action, it must be conditionally certified as a collective action. The court may certify an opt-in collective action so long as the aggrieved employees are similarly situated.[3] Section 216(b) does not define "similarly situated." The Tenth Circuit has approved an *ad hoc* case-by-case basis for determining whether employees are "similarly situated" for purposes of § 216(b).[4] This involves a two-step inquiry.[5] The first step occurs at the "notice stage" of the proceedings. Here, the court determines if certification is proper for purposes of sending notice of the action to potential collective action members.[6] At this stage, the court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy

---

[1] 29 U.S.C. § 216(b).

[2] *Id.*

[3] *See id.*

[4] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[5] *Id.* at 1105.

[6] *Id.* at 1102.

2

or plan."[7] This standard is very lenient and typically results in conditional certification.[8]

After discovery is complete, defendant may file a motion to decertify, and the court then applies a stricter standard to assure that plaintiffs are actually similarly situated.[9] During this second stage, the court reviews a number of factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required [] before instituting suit."[10]

## II. Background

Plaintiffs filed this action on July 21, 2009. In support of the allegations in the Complaint, plaintiffs have attached five declarations to their motion for conditional certification, setting forth their experiences as store managers for Harbor Freight Tools USA, Inc. ("Harbor"). The allegations of plaintiffs' Complaint and declarations are summarized as follows.[11]

Plaintiffs Stephanie R. Green ("Green"), Brent Foster ("Foster"), Trey Pace ("Pace"), Dennis Collins ("Collins"), and Andy Van Meter ("Van Meter") brought this action on behalf of themselves and all others similarly situated, against their former employer, defendant Harbor, for misclassifying its store managers as exempt employees, and violating the FLSA by failing to fully compensate them for overtime work performed.

---

[7]*Id.* (internal alterations omitted); *Gieseke v. First Horizon Home Loan, Corp.*, 408 F. Supp.2d 1164, 1166 (D. Kan. 2006) (citations omitted).

[8]*Thiessen*, 267 F.3d at 1103; *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).

[9]*Thiessen*, 267 F.3d at 1102–03.

[10]*Id.* at 1103; *Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2009 WL 352603, at *4 (D. Kan. Feb.12, 2009).

[11]To the extent the Complaint and declarations conflict on the details of an individual's employment history, the Court relied on the facts in the declarations.

Green began working for Harbor in 2002 as an assistant store manager in the Independence, Missouri retail store. In 2005, she was promoted to the position of store manager at the Shawnee, Kansas store, and her compensation changed from an hourly rate to a salary rate. She held that position until August 2009, working an average of 60 to 80 hours per week.

Foster worked as a store manager in Harbor's Topeka, Kansas retail store from 2000 until April 2009. He worked an average of 60 hours per week.

Pace worked as a store manager from March 2008 until February 2009, at the Sioux City, Iowa retail store. He worked an average of 35 hours of overtime per week.

Collins began working for Harbor as an assistant store manager in January 2001. In 2002, he was promoted to the position of store manager, a position he held until 2008, and his compensation changed from an hourly rate to a salary rate. He worked at Harbor's stores in Davenport, Iowa; Omaha, Nebraska; and St. Louis, Missouri. He estimates that he worked an average of 70 hours, and at times, more than 80 hours per week.

Van Meter began working for Harbor in March 2002 as an assistant store manager at the Springfield, Missouri store. He became a store manager in September 2002, and worked in that position until April 2009, working an average of 60 to 70 hours per week. He worked at Harbor retail stores in Minneapolis, Minnesota; West Palm Beach, Florida; Orlando, Florida; and Joplin, Missouri.

As store managers, each plaintiff was paid on a salary basis. They did not have the power to hire and fire employees, and they were not permitted to discipline employees without the direction and approval of upper management. As store managers, they spent eighty to ninety percent of their time performing manual labor tasks, including: opening and closing the store;

periodically running the store's cash register; unloading delivery trucks with merchandise for the store; performing store maintenance and cleaning; stocking store shelves; checking store inventory; affixing prices to products; ordering supplies; counting money; managing new hire paperwork; preparing daily deposits; preparing daily paperwork; running reports; training and counseling staff; writing out daily tasks for all employees; insuring daily and weekly assignments are completed; performing customer service; and monitoring the total store. They were not required to keep accurate time records while employed by Harbor, and Harbor never paid them overtime compensation for overtime hours worked as store managers. Plaintiffs typically worked sixty to ninety hours a week. Plaintiffs state that Harbor required all of its store managers to perform similar duties and similarly denied them overtime compensation for work performed in excess of forty hours per week.

Starting in 2007, Harbor instituted a policy that, if the quantity of designated items in stock, but not on sales shelves, was "above 60 [sic],"[12] then store managers were required to work a minimum daily work shift of 5 a.m. until 5 p.m. until the quantity was "below 60." The longest number of consecutive days for any plaintiff to work that shift was two months.

Plaintiffs allege that they did not fall under any exemption or exception to the overtime rate required by the FLSA, including the executive exemption. Plaintiffs allege that defendant willfully misclassified them as exempt employees and denied them overtime compensation for work performed in excess of forty hours in a work week. As relief, plaintiffs seek judgment in excess of $75,000, for unpaid wages and interest, liquidated damages, punitive damages, attorneys' fees, expert witness fees, and costs, and for an order enjoining defendant from further

---

[12](Doc. 1 at 5.) Although plaintiffs' Complaint does not explain what "60" was intended to measure, the Court assumes it is intended to be a percentage.

violations.

Additionally, plaintiffs request conditional certification of their claims as a collective action. Harbor operates approximately 329 retail stores nationally, and each store has one store manager. Plaintiffs estimate the collective action could potentially include 350 to 500 employees. Since this action was commenced, seven plaintiffs have opted in by filing "Consent to Join" forms with the Court. Twelve plaintiffs are currently involved in this litigation.

## III. Discussion

Plaintiffs' current motion asks the Court to conditionally certify the action as a collective action under § 216(b) of the FLSA for the following class:

> Individuals employed by Harbor Freight Tools USA, Inc. and any predecessors from the time period July 20, 2006 to the present with the title Store Manager at any Harbor Freight Tools retail store.[13]

Plaintiffs also ask the Court to authorize mailing and electronic publishing of plaintiffs' proposed notice to all putative plaintiffs; and to require Harbor to produce a list of all potential class members, including their names, addresses, job classifications, last known mailing addresses, telephone numbers, Social Security numbers, and email addresses if known, in an Excel spreadsheet format.

### A. Conditional Certification

Plaintiffs' motion is before the Court at the notice stage of review. The parties have not yet completed discovery.[14] Furthermore, the scheduling order only provides deadlines for

---

[13]Plaintiffs originally defined the class to include persons with the title Store Manager, "or the like," but plaintiffs agreed to remove the clause after defendant objected.

[14]*See Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *2 (D. Kan. July 27, 2005) (applying first-stage analysis even though discovery had been conducted).

6

limited discovery preceding the motion for conditional certification, and a trial date has not yet been set. As the parties do not dispute that the present motion is pending before this Court at the first stage, the Court applies a lenient notice-stage analysis, reviewing the allegations in plaintiffs' Complaint and declarations, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."[15]

Generally, courts in this district have limited the scope of their review on a motion for conditional certification to the allegations in plaintiffs' complaint and supporting affidavits.[16] In opposing plaintiffs' motion, defendant attached 836 pages of discovery, deposition testimony, interrogatories, and a table summary, and invites the Court to look beyond plaintiffs' pleadings to evaluate "*more than* mere allegations."[17] In asking the Court to consider its voluminous attachments, defendant quotes *Thiessen v. General Electric Capital Corp.*[18] as stating: "[a] district court considering a motion to certify [or decertify] is entitled to look past the pleadings and examine the evidence produced during discovery."[19] However, defendant quotes the Tenth Circuit out of context.[20] In *Thiessen*, the Court was reviewing defendant's motion to decertify at

---

[15]*Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[16]*Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 434 & n.4 (D. Kan. 2007) (declining to consider defendant's additional evidence at the "notice stage" because plaintiff is only required to produce substantial allegations and supporting affidavits or declarations) (collecting cases); *see Gipson v. S.W. Bell Tel. Co.*, No. 08-cv-2017-EFM/DJW, 2009 WL 1044941, at *3 n.22 (D. Kan. Apr. 20, 2009); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *2 (D. Kan. Oct. 17, 2005); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004).

[17](Doc. 66 at 10) (emphasis in original).

[18]267 F.3d 1095 (10th Cir. 2001).

[19]*Id.* at 1108.

[20]*See Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 434 (D. Kan. 2007) (rejecting a similar reading of *Thiessen*).

the second stage, scrutinizing evidence to determine whether the putative plaintiffs were actually similarly situated.[21] The motion before this Court is one for conditional certification only. At this initial stage, the court applies the notice-stage determination of "similarly situated" leniently.[22] In reviewing a motion for conditional certification, the court does not weigh the evidence, resolve factual disputes,[23] or rule on the merits of plaintiffs claims.[24] The court "requires *nothing more* than substantial allegations."[25] And judges in this District have declined to proceed to the second stage before notice is given.[26]

Defendant relies, in part, on this Court's decision in *Stubbs v. McDonald's Corp.*[27] to argue that conclusory or speculative allegations alone are insufficient to rise to the level of

---

[21]*Thiessen*, 267 F.3d at 1105–08.

[22]*Id.* at 1102; *see Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at *5–*6 (M.D. Fla. Aug. 21, 2008) (noting that defendant produced over 500 pages of evidence, but holding that "more is not necessarily better, and the evidence [defendant] presents goes far beyond the scope of this Court's review at the first stage of the certification process.").

[23]*Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008) ("even assuming that plaintiffs had submitted evidence that could be considered contradictory, the fact that evidence exists negating plaintiffs' claims does not warrant the denial of conditional certification where plaintiffs nonetheless have presented substantial allegations supporting the existence of a policy"); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *2 (D. Kan. Oct. 17, 2005) (deciding to only consider the pleadings and affidavits filed by plaintiffs because, "at this point, the Court is not prepared to weigh the evidence"); *Whalen v. United States*, 85 Fed. Cl. 380, 384 (Fed. Cl. 2009) ("In the process, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.") (citation and internal quotation marks omitted); *see also Thiessen*, 267 F.3d at 1106–07 (noting that, in applying the stricter second-stage standard, trial court weighed the evidence and made factual findings in determining whether plaintiffs were "similarly situated," and as a result "the district court essentially deprived plaintiffs of their right to have the issues decided by a jury, or to at least have the court determine, under summary judgment standards, whether there was sufficient evidence to send the issue to the jury.").

[24]*Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006).

[25]*Thiessen*, 267 F.3d at 1102 (alterations omitted; emphasis added).

[26]*Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 434 & n.4 (D. Kan. 2007); *Gieseke*, 408 F. Supp. 2d at 1167 (noting significant prejudice to putative plaintiffs if the first stage were bypassed).

[27]227 F.R.D. 661 (D. Kan. 2004); *see Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (analyzing *Stubbs* in light of *Thiessen*).

8

substantial allegations. Because plaintiffs have not presented speculative allegations in this case, *Stubbs* is not instructive here. In *Stubbs*, plaintiffs alleged that first and second assistant managers employed by defendant were misclassified as "exempt" rather than "nonexempt."[28] To reduce costs, defendant willfully under-staffed its McDonald's restaurants so as to require first and second assistant managers to perform the duties of staff members who were compensated on an hourly basis.[29] Plaintiffs' motion for conditional certification was scantily supported by two affidavits by a husband and wife who described their job duties only generally and claimed to represent all first and second assistant managers, yet failed to demonstrate any first-hand exposure to the responsibilities of other assistant managers.[30] Furthermore, there was no indication other similarly situated assistant managers were interested in joining the collective action.[31] In opposition to the motion, defendant attached detailed affidavits by other first and second assistant managers employed at the restaurants at issue, which directly controverted plaintiffs' speculative allegations.[32]

Here, by contrast, plaintiffs produced declarations by five employees with personal experience managing defendant's stores in various locations, all with very similar experiences: they provided a detailed description of their regular job duties, which were substantially similarly; they all held the position of "store manager"; they all worked substantial overtime hours, ranging from twenty to forty hours of overtime per week; they each spent 80 to 90% of

---

[28]*Stubbs*, 227 F.R.D. at 663.

[29]*Id.* at 664.

[30]*Id.* at 665.

[31]*Id.* at 663–66.

[32]*Id.* at 666.

9

their time performing manual labor tasks; they were all paid on a salary basis and did not keep records of their overtime hours; they were denied managerial discretion; and they were denied overtime compensation. The Court finds these facts are sufficient to demonstrate plaintiffs are similarly situated with other putative plaintiffs for purposes of conditional certification of a collective action under § 216(b). Plaintiffs did not speculate about unspecified FLSA violations. Rather, they alleged they held similar job titles and were required to perform similarly job duties. Unlike the plaintiffs in *Stubbs*, who alleged they were the victims of defendant's policy to under-staff its restaurants,[33] plaintiffs here allege defendant willfully misclassified them as "exempt" and yet *required* them to perform substantial nonexempt work without overtime compensation. As discussed further below, the Court finds plaintiffs have met the low threshold of providing substantial allegations that they were together the victims of a single policy, sufficient to warrant conditional certification. Defendant's evidentiary arguments, at this stage, do not directly controvert or unravel the substantial allegations presented by plaintiffs.

Under the "notice stage" analysis, defendant presents two challenges to plaintiffs' allegations. It argues that plaintiffs have not sufficiently alleged that (1) they are "similarly situated" or (2) they were the victims of a "single decision, policy , or plan" warranting conditional certification.

      **i.    Similarly Situated**

First, defendant contends a collective action is inappropriate because any claim that an employee was misclassified based on the nature of his or her day-to-day job duties will require case-by-case analysis of individual facts and circumstances, especially when classification is

---

[33]*See Stubbs*, 227 F.R.D. at 666.

based on the kinds of work regularly performed. Next, defendant argues that the job duties actually performed by each store manager, the amount of time required to perform those duties, and the amount of discretion exercised in performing managerial responsibilities will vary between store managers and will be dependent, in part, on the volume of inventory in each store, the number of staff available, and the manager's ability to delegate.

In general, courts have taken two different approaches to certifying a collective action on the basis of allegations that FLSA exemptions were misapplied: (1) courts have denied conditional certification, holding that the individualized inquiry required to determine whether an employee is exempt is not conducive to a collective action; or (2) courts have "refused to even consider the individualized nature of factual inquiries at the notice stage, holding that such evaluation is not appropriate until the second stage analysis."[34] Courts in the District of Kansas have generally taken the second approach, finding that detailed evaluations of individual factual differences is better reserved for the second stage, after the completion of discovery.[35] The Court follows the other judges in this District and declines to consider defendant's arguments based on individual factual circumstances until the second stage.

Furthermore, the Court is not persuaded the distinctions identified by defendant overcome plaintiffs' substantial allegations in support of conditional certification. Plaintiffs allege their similarities are substantial: their job duties were similar, and the nonexempt work

---

[34]*Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *3 (D. Kan. Oct. 17, 2005) (collecting cases); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 372–73 (E.D. Tenn. 2006) (noting split between courts and placing Tenth Circuit in second class).

[35]*Id.* at *4 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004)); *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 433–434 & nn.3, 4 (D. Kan. 2007); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006).

performed by store managers—in proportion to their managerial tasks—constituted 80 to 90% of their work, while managerial discretion was very constrained. They were all paid on a salary basis, and they were not required to keep accurate records of their hours worked. At the notice stage, plaintiffs are not required to show that their job duties were identical.[36] Plaintiffs are all store managers who were subjected to the same unlawful policy, that is, they were required to perform substantial manual labor tasks, were misclassified as exempt, and denied overtime compensation. At this point, plaintiffs' allegations, supported by the declarations of five store managers who worked at over ten of defendant's stores nationwide, meet the low threshold for conditional certification and for sending notice to other putative plaintiffs.[37]

To the extent defendant is asking this Court to consider the factual setting of each store manager in each district and their daily duties, the Court finds such arguments premature.[38] These issues will be more fully addressed at the second stage, after discovery is completed and the evidence is more fully developed to allow the Court to consider the disparate factual and employment settings of each plaintiff, the scope of the alleged violation, or the various defenses

---

[36]*See Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (declining to require identical job duties before conditionally certifying a collective action, as such analysis applies at the second stage); *see also Underwood v. NMC Mortgage Corp.*, No. 07-2268-EFM, 2009 WL 1322588, at *3 (D. Kan. May 11, 2009) (considering, under the second-stage analysis, the similarity of employees' job duties, geographical location, supervision, and salary).

[37]*Renfro*, 243 F.R.D. at 434 ("Given the allegations of the complaint and supporting declarations, which suggest that plaintiffs maintained similar employment positions and did not receive overtime, plaintiffs have satisfied the low threshold required to demonstrate at the notice stage that all putative class members are similarly situated for purposes of conditional collective action certification under Section 216(b) of the FLSA.").

[38]*See Gipson v. Sw. Bell Tel. Co.*, No. 08-cv-2017-EFM/DJW, 2009 WL 1044941, at *3 (D. Kan. Apr. 20, 2009) (declining to compare job duties at the first stage).

defendant may assert against individual plaintiffs.[39] On a motion for conditional certification, the court does not reach the merits of plaintiffs' claim.[40] To the extent defendant has identified possible defenses or justifications for decertification, such arguments will be more fully considered should defendant file a motion for summary judgment or motion to decertify.[41] Questions about the manageability of the case will also be considered at that time.[42]

### ii. Single Decision, Policy, or Plan

Next, defendant argues that, in light of Harbor's organizational structure, plaintiffs and other store managers have not alleged they were similarly situated, nor that they were subjected to a single decision or policy. Defendant argues that Harbor's organizational structure consists of six regions, each overseen by a Regional Manager; a region is divided into eight districts, each overseen by a District Manager; and each store has one Store Manager who reports to the District Manager. Defendant states that it has approximately fifty districts. Because of its national organization, defendant asserts, no individual store manager would know how stores in

---

[39] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001). The fact that defendant may assert the same defense against all putative plaintiffs, *i.e.*, that they were exempt from FLSA requirements, supports conditional certification. *See Underwood v. NMC Mortgage Corp.*, No. 07-2268-EFM, 2009 WL 1322588, at *4 (D. Kan. May 11, 2009) (noting at second stage that "the fact that the same defense equally applies to each Plaintiff works in Plaintiffs' favor").

[40] *Renfro*, 243 F.R.D. at 435 (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006)).

[41] The Court notes that defendant has already filed two motions for summary judgment relating to whether two opt-in plaintiffs are exempt from the overtime compensation requirements of the FLSA. As plaintiffs note, although an employee bears the burden to prove an employer has violated the FLSA, it is the employer's burden to prove that an employee is exempt from FLSA coverage. *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008). These defenses, however, are not resolved on a motion for conditional certification. *See Hammond v. Lowe's Home Ctrs., Inc.*, No. Civ.A. 02-2509-CM, 2005 WL 2122642, at *3 (D. Kan. Sept. 1, 2005) (noting that, at the notice stage, "plaintiffs have the burden of proof, albeit a lenient one," but on a motion to decertify, "defendant would have the burden of proof on its motion."). The Court will consider defendant's summary judgment motions in a separate order.

[42] *Gieseke*, 408 F. Supp. 2d at 1168.

13

other districts or other regions are run, and store managers may not be similarly situated across districts or regions, making a nation-wide collective action inappropriate. Plaintiffs concede that they do not have personal knowledge of districts in which they have never worked. However, plaintiffs have worked in a number of districts nationwide, including: Shawnee and Topeka, Kansas; Sioux City and Davenport, Iowa; Omaha, Nebraska; St. Louis and Joplin, Missouri; Minneapolis, Minnesota; West Palm Beach and Orlando, Florida; as well as stores in which they served a assistant managers, including Independence and Springfield, Missouri. Furthermore, they allege that the duties they performed as store managers without overtime compensation were required by defendant. The Court finds this breadth of personal knowledge and experience is sufficient to support the allegation that Harbor's store managers were together the victims of a single policy to misclassify store managers as exempt and deny them overtime wages. Defendant has not identified the regions or districts where each named plaintiff worked, or argued that a different class would be more appropriate.

At this stage, having reviewed plaintiffs' pleadings and declarations, the Court finds plaintiffs have met their light burden. Plaintiffs have set forth "substantial allegations that the putative class members were together the victims of a single decision, policy or plan"[43] to misclassify store managers as exempt in order to deny them compensation for substantial overtime, manual work they were required to perform as part of their jobs.[44] The court "requires

---

[43] *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[44] *See Renfro*, 243 F.R.D. at 434 (conditionally certifying a collective action on the basis of similar allegations); *Gieseke*, 408 F. Supp. 2d at 1168; *McCaffrey v. Mortgage Sources Corp.*, No. 08-2660-KHV, 2009 WL 2778085, at *3–*4 (D. Kan. Aug. 27, 2009); *Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (finding putative plaintiffs similarly situated for purposes of conditional certification although job duties were not identical); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *3–*4 (D. Kan. Oct. 17, 2005) (conditionally certifying a collective action

nothing more."[45] There may be some differences in how each store functioned or how each plaintiff's damages will be calculated.[46] However, without reaching the merits of plaintiffs' claims, the Court finds plaintiffs' allegations are sufficient for purposes of conditional certification. Notice of this collective action should be sent to putative plaintiffs and the parties should proceed to discovery on this claim.[47]

### B. Notice to Putative Plaintiffs

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."[48] Plaintiffs have attached a proposed notice to their motion. However, defendant opposes the notice and requests that, if the Court conditionally certifies the collective action, the parties be allowed to address the notice at that time. In their reply, plaintiffs' counsel state they are willing to cooperate with defense counsel to revise the present notice.

It appears to the Court that the parties have not yet met and conferred on a mutually agreeable notice to be sent to putative plaintiffs. Furthermore, plaintiffs have not submitted a proposed consent-to-join form. Accordingly, with regard to the form and substance of the notice and consent-to-join forms to be sent to putative collective action members, plaintiffs' motion is

---

on claims involving FLSA exemptions).

[45]*Thiessen*, 267 F.3d at 1102 (internal alterations omitted).

[46]*Gieseke*, 408 F. Supp. 2d at 1168 (noting that individual differences in damages does not prevent conditional certification).

[47]*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[48]*See id.*

denied without prejudice, to be reasserted after counsel have consulted with one another and attempted to resolve or at least narrow their disputes.[49] The parties should confer and a joint proposed notice and consent-to-join form should be submitted for the Court's review, as directed below. If the parties cannot come to a compromise on specific issues, the Court advises plaintiff to file a motion and defendant to file a response as indicated below. To the extent the parties have taken different positions, they should support their respective positions with case law or examples of notices/consent forms in other cases in this District. The parties are encouraged to review the forms approved in *Fortna v. QC Holdings, Inc*.[50] The Court notes in advance, however, that any reference to the District Court on the notice should be removed.[51] The parties are encouraged to reach an agreement.

Plaintiffs' also ask the Court to authorize electronic publishing of notice to all putative plaintiffs. It is unclear to the Court what type of notice plaintiffs intend to effect through "electronic publishing." To the extent plaintiffs have not explained what notice they intend or demonstrated that this form of notice is appropriate in this case, or that regular notification via First Class mail would be unsuccessful, plaintiffs' request to publish notice electronically is denied without prejudice.

Finally, plaintiffs allege defendant engaged in this policy and practice willfully, invoking

---

[49]*Pivonka*, 2005 WL 1799208, at *5.

[50]No. 06-CV-0016-CVE-PJC, 2006 WL 2385303 (N.D. Okla. Aug. 17, 2006).

[51]*See Hoffmann-La Roche Inc.*, 493 U.S. at 169, 174 (declining to discuss the content of the notice, but when court-authorized notice included "a statement that the notice had been authorized by the District Court, but that the court had taken no position on the merits of the case," the Supreme Court reminded lower courts that they must "take care to avoid even the appearance of judicial endorsement of the merits of the action.").

a three year statute of limitations.[52] Under the FLSA, the statute of limitations for each plaintiff runs until the date he or she files a written consent to join the action, unless the limitations period is equitably tolled.[53] Therefore, with regard to putative plaintiffs who will receive notice of this action, the Court applies a three-year statute of limitations period to the putative collective action members. Although plaintiffs have proposed a class "from the time period July 20, 2006 to the present," the Court finds it appropriate to limit the class to "three years from the date of the Court's order to the present."[54]

In preparation for the distribution of notice to putative plaintiffs, defendant is directed to provide plaintiffs' counsel with a list of all present and former employees within the designated class by the date specified below. The exact information plaintiffs seek regarding putative plaintiffs' varies throughout their motion. The Court has focused on those items listed at the end of their motion.[55] At this point, without some additional showing of need, the Court declines to compel defendant to produce employees' social security numbers.[56]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiffs' Motion for Conditional Class Certification and Notification of All Putative Class Members (Doc. 58) is

---

[52] 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135 (1988) (applying three-year statute of limitations to willful violations of the FLSA, and defining willful as "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute").

[53] 29 U.S.C. § 256; *In re Am. Family Mut. Ins. Co. v. Overtime Pay Litig.*, No. 06-cv-17430-WYD-CBS, 2009 WL 248677, at *4 (D. Colo. 2009).

[54] *See Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 435 n.5 (D. Kan. 2007).

[55] *See* Doc. 59 at 9.

[56] *See Gieseke v. First Horizon Home Loan Corp.*, No. 04-2511-CM-GLR, 2007 WL 445202, at *4 (D. Kan. Feb. 7, 2007) (performing a balancing test before granting plaintiffs' motion to compel); *see also Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678 n.8 (D. Kan. 2009) (allowing plaintiffs access to employees' social security numbers after plaintiffs' counsel explained the need for this additional information).

**granted in part and denied in part.** The Court **grants** plaintiffs' motion to conditionally certify plaintiffs' claims under § 216(b) of the FLSA for the following class of persons:

> Individuals employed by Harbor Freight Tools USA, Inc. and any predecessors from the time period three years from the date of the Court's order to the present with the title Store Manager at any Harbor Freight Tools retail store.

**IT IS FURTHER ORDERED THAT** plaintiffs' motion to approve plaintiffs' form of notice is **denied without prejudice**, to be reasserted after the parties have conferred. The parties shall meet and confer in an attempt to reach an agreement on a proposed notice and consent form to be sent to putative plaintiffs, including a proposed deadline for the potential opt-in plaintiffs to join this action by filing consents with the Court. If agreement is reached, the parties shall submit a joint proposed notice and consent form to the Court for approval within fourteen (14) days of the Court's order. To the extent the parties are unable to reach an agreement on a proposed notice and consent form, plaintiffs shall file a motion within fourteen (14) days of the Court's order, to seek approval of the proposed forms, and defendant shall have fourteen (14) days to respond to plaintiffs' motion. Defendant may, if necessary, submit an alternative proposed notice and consent form with its response.

**IT IS FURTHER ORDERED THAT** plaintiffs' motion requesting a list of all putative plaintiffs within the designated class is **granted.** Defendant shall provide to plaintiffs' counsel a list of all employees within the defined class, including their names, addresses, job classifications, last known mailing addresses, phone numbers, and email addresses if known, in an Excel spreadsheet format within thirty (30) days of the Court's order.

**IT IS FURTHER ORDERED THAT** plaintiffs' request to electronically publish notice to all putative plaintiffs is **denied without prejudice.**

**IT IS SO ORDERED.**

Dated: <u>August 17, 2010</u>

<u> S/ Julie A. Robinson </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE